**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

F I L E D

SEP 26 2016

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

|  |  |
|---|---|
| BAYER CROPSCIENCE LP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 3:16 CV790 |
| | ) |
| v. | ) |
| | ) TRIAL BY JURY DEMANDED |
| | ) |
| BASF SE, | ) PUBLIC VERSION |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

1.     This is a patent case.  Bayer CropScience LP seeks a declaration that BASF SE's patent covering a polymorph of the herbicide tembotrione is invalid and not infringed because Bayer invented and used that polymorph first.

## PARTIES

2.     Plaintiff Bayer CropScience LP ("Bayer") is a United States limited partnership, organized and existing under the laws of Delaware, having its principal place of business at 2 T.W. Alexander Drive, Research Triangle Park, North Carolina 27709.

3.     Bayer is committed to world-class scientific discovery with a clear mandate: to develop new integrated solutions to help farmers and communities feed and protect our planet. Bayer invests in innovation to drive its sustainable solutions.

4.     On information and belief BASF SE ("BASF") is a *"societas Europea"* public company registered in accordance with the corporate law of the European Union, having its principal place of business at Carl-Bosch-Str. 38, 67056 Ludwigshafen, Germany.

**PATENT-IN-SUIT**

5.      The patent at issue is U.S. Patent No. 8,309,769 ("the '769 patent"), attached as

Exhibit A.  The '769 patent issued on November 13, 2012 and claims a priority date to

International Application No. PCT/EP2008/053060, filed March 14, 2008.  The '769 patent is

entitled "Crystalline forms of 2-[2-chloro-4-methylsulfonyl-3-(2,2,2-trifluoroethoxymethyl)

benzoyl]cyclohexan-1,3-dione."

6.      On information and belief BASF owns the '769 patent.

**BACKGROUND**

7.      Bayer markets an herbicide under the trade name Laudis®.  Bayer invented the

active ingredient in Laudis®, called tembotrione or 2-[2-chloro-4-(methylsulfonyl)-3-[(2,2,2-

trifluoroethoxy)methyl]benzoyl]-1,3-cyclohexanedione.  Laudis® contains a polymorphic form

of tembotrione invalidly claimed in BASF's '769 patent.  Laudis® controls the growth of several

different kinds of broadleaf and grass weeds on corn-growing farms.  Laudis® is formulated as

an aqueous suspension concentrate.

8.      Bayer's predecessor Aventis CropScience GmbH invented tembotrione.  Bayer

merged with Aventis in 2002 (collectively referred to as Bayer after the merger).

9.      On November 16, 2005, Bayer submitted an application with the United States

Environmental Protection Agency (EPA) to register tembotrione as an herbicide.  Prior to that

application Bayer had formulated batches of tembotrione for the purpose of establishing its

safety and efficacy.  Those batches were tested for use as an herbicide in the United States in

advance of Bayer's application to the EPA.  In its application, Bayer submitted studies using

these formulations of tembotrione to establish the safety of tembotrione as an herbicide.

10.     In late 2005 and early 2006, Bayer employees made public the results of Bayer's field tests of tembotrione in conferences and meetings in the United States. These included: the North Central Weed Science Society Meeting in December 2005 in Kansas City, Missouri; the Northeastern Weed Science Society Meeting in January 2006 in Providence, Rhode Island; the 46th Meeting of the Weed Science Society of America in February 2006 in New York, New York; and the Western Society of Weed Science Annual Meeting in Sparks, Nevada in March 2006.

11.     In early 2006, Bayer also presented information on tembotrione as an herbicide to a group of individuals at universities. Bayer disclosed to these individuals the chemical structure of tembotrione, explained that it was formulated as a suspension concentrate, and discussed how its use as an herbicide along with certain adjuvants would effectively control weed growth. Indeed, the purpose of the presentation was to initiate promotional use of tembotrione by researchers at universities and other organizations across the United States.

12.     Bayer secured external researchers' cooperation in conducting such promotional field trials with tembotrione in 2006. Bayer then proceeded to send samples of tembotrione, formulated as a suspension concentrate and in the same polymorphic form as the '769 patent's "Form A," to these cooperators for use. Universities that received these tembotrione samples included (but were not limited to) the University of Delaware, University of Kentucky, Ohio State University, University of Massachusetts, University of Minnesota, North Dakota State University, Oregon State University, Pennsylvania State University, Southern Illinois University, Texas A&M University, and Virginia Tech University.

13.     The following sections discuss three batches of tembotrione containing the crystalline form claimed in the '769 patent in public use in the United States more than one year

3

before the '769 patent's filing date.  These same batches were likewise reduced to practice in the United States prior to the priority date identified in the '769 patent.  On information and belief, others exist.

**Tembotrione Batch OP2350088**



16.    BASF's '769 patent also claims three crystal polymorphic forms of tembotrione, called Forms A, B, and C.  These three forms correspond to the three Modifications identified in Bayer's analysis.  Modification I is the same polymorphic form as the '769 patent's "Form A."

18. ███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████

19. ███████████████████████████████████

███████████████████████████████████████████

█████████████████████████████

20.  Formulation 06DAL005P061 was an herbicide formulation containing an aqueous suspension of tembotrione. The tembotrione in this formulation contained over 95% of the '769 patent's "Form A." Throughout 2006, Bayer sent tembotrione from formulation 06DAL005P061 to several individuals at universities and other companies. These individuals included Richard Zollinger at North Dakota State University, who signed a sample agreement with Bayer on March 28, 2006, and Bryan Young at Southern Illinois University, who signed a similar agreement with Bayer on March 24, 2006. Bayer also sent formulation 06DAL005P061 to Prasanta Bhowmik at the University of Massachusetts, who signed his sample agreement on May 10, 2006. Researchers at the USDA and at other companies such as Pioneer, in Johnston, Iowa also received samples of formulation 06DAL005P061 in 2006.

21.  Bayer sent these samples to the university cooperators so they could conduct demonstration field trials according to certain Bayer protocols. For example, protocol HP06NARJNA was entitled "AE 0172747 / Sweet corn / Crop Tolerance / University – Evaluation of 747 crop tolerance on sweet corn." Protocol HP06NARJNB is entitled "AE

0172747 / Sweet corn / Crop Tolerance / University - Evaluation of 747 crop tolerance on sweet corn." The purpose of these field trials was to provide exposure for Bayer CropScience corn herbicides with university cooperators.

22.    The individuals who received tembotrione used it as an herbicide on farms or other public spaces in several states throughout the United States. The sample agreements that Bayer entered into with these individuals regarding their use of tembotrione did not require confidentiality. Instead, the university cooperators agreed "to provide the results for this year's testing to Bayer CropScience as they become available[; . . .] to use these samples only in accordance with the Protocol, not to provide samples to any third party, and to allow Bayer CropScience to review and comment on the results before any presentation or publication."

23.    Bayer's own internal procedures regarding these sample agreements, as well as Bayer personnel overseeing the field trials, recognized that the cooperator had no obligation to maintain confidentiality. To the contrary, Bayer personnel had every expectation that the university cooperators would promote tembotrione to farmers during and after the 2006 growing season. Consistent with the sample agreements and Bayer's expectations, several of these individuals made public the results of their work in conferences or on the internet in 2006. For example, Richard Zollinger of North Dakota State University published the results of his work with tembotrione at the 61st Annual Meeting of the North Central Weed Science Society from December 12-14, 2006 in Milwaukee, Wisconsin. Bryan Young of Southern Illinois University also published the results of his tembotrione field tests at the same North Central Weed Science Society meeting in December, 2006, as well as on the internet. Professor Prasanta Bhowmik at the University of Massachusetts published a report of his tembotrione field tests titled "Massachusetts Weed Science Research Results 2006." The report stated that its purpose was

6

"to inform cooperators in industry, colleagues at other institutions, and other persons interested in weed control, of the results of our research projects conducted in 2006."

24.     In addition to the field trials, Bayer's application with the EPA to register tembotrione as an herbicide also used an analysis of batch OP2350088. The study of OP2350088 that Bayer submitted to the EPA included an investigation into the thermal stability, melting point, and boiling point of batch OP2350088. Bayer had conducted these tests as early as 2004.

**Tembotrione Formulation EFIM000409**



25.

26.

27.     In May and early June 2006, Bayer sent samples of EFIM000409 to university cooperators: Mark Van Gessel at the University of Delaware and Bill Curran at Pennsylvania State University. Bayer sent these samples for the university cooperators to conduct demonstration trials according to one of the same protocols identified above.

28.     Bayer had entered into sample agreements with these university cooperators regarding their use of tembotrione that did not require confidentiality, subject to the same terms described above. The university cooperators who had received EFIM000409 conducted field

tests in the spring and summer 2006. Mark Van Gessel at the University of Delaware published the results of his tembotrione field tests in a publication called the "Delaware Weed Control Results 2006." These publications described the results of the use of tembotrione on corn in June 2006. Bill Curran at Pennsylvania State University published his work with tembotrione as well, in a report titled "2006 Herbicide Field Trials." Curran's study described the use of tembotrione following applications on corn in May and June 2006.

**Tembotrione Formulation 04DAL002P122**



29.

30.

31.     In March and April 2006, Bayer then sent samples of 04DAL002P122 to several individuals at universities and other companies. These individuals included Randall Currie at Kansas State University, who signed a sample agreement with Bayer on March 23, 2006, and Fritz Breitenbach at the University of Minnesota, who signed a sample agreement on April 3, 2006. Bryan Young at Southern Illinois University also received a sample of 04DAL002P122 and signed a sample agreement on March 24, 2006. Bayer sent these samples for the university

cooperators to conduct demonstration field trials according to Bayer protocols, including protocol HP06NARJNA, discussed above.

32.     Bayer had entered into sample agreements with these university cooperators regarding their use of tembotrione that did not require confidentiality, subject to the same terms described above. The university cooperators who had received 04DAL002P122 conducted field tests in spring and summer 2006. Randall Currie at Kansas State University published the results of his tembotrione field tests in Kansas State's "Field Day 2007 – Report of Progress 980." Currie co-authored an article discussing his testing of various corn herbicides in which he wrote about the "profit potential in herbicide development" and specifically identified "the herbicide . . . Laudis (tembotrione)." Fritz Breitenbach at the University of Minnesota co-authored a report titled "Evaluation of Liberty®, Option®, and AE 0172747 herbicide programs in field corn at Rochester, MN in 2006," in which he discussed his field trials using tembotrione ("AE 0172747") for weed control in field corn in southeastern Minnesota. Bryan Young of Southern Illinois University published the results of his tembotrione field tests at the North Central Weed Science Society meeting in December 2006, as well as on the internet.

33.     On November 28, 2007, the EPA approved Bayer's registration application for tembotrione. As mentioned above, Bayer markets the registered form of tembotrione under the trade name Laudis®. Bayer first sold Laudis® as part of the 2008 growing season.

34.     BASF filed the PCT application for the '769 patent in March 2008.

## JURISDICTION AND VENUE

35.     This civil action involves substantial patent claims arising under an Act of Congress relating to patents. The Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338(a), 2201(a), and 2202.

36.    Personal jurisdiction exists over BASF under 35 U.S.C. § 293. Section 293 provides that courts in this district shall have jurisdiction over foreign patentees who have not filed with the Patent and Trademark Office "a written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the patent or rights thereunder." *Id.* On information and belief BASF owns the '769 patent, does not reside within the United States, and has not designated a resident agent with the Patent and Trademark Office. Accordingly, this Court "shall have the same jurisdiction to take any action respecting the patent or rights thereunder that it would have if the patentee were personally within the jurisdiction of the court." *Id.*

37.    Venue is proper in this district under 28 U.S.C. § 1391(b)(3) because BASF is subject to this Court's personal jurisdiction under 35 U.S.C. § 293. Venue is also proper under 28 U.S.C. § 1391(c)(3) because a defendant that does not reside in the United States may be sued in any judicial district.

38.    This is a case of actual controversy within the jurisdiction of the Court. The Court may declare the rights or other legal relations of the parties under 28 U.S.C. §§ 2201 and 2202.

39.    The '769 patent is based on PCT Number PCT/EP2008/053060 ("PCT 053060"), which BASF filed on March 14, 2008. BASF also filed an application for a European Patent based on PCT 053060 from which BASF obtained EP 2 137 142 ("EP '142") in July 2015. BASF obtained national designations for EP '142 in several European nations, including Germany and Italy (collectively "the '769 patent family").

40.    EP '142 and the '769 patent claim the same subject matter. For example, claims 1 of EP '142 and the '769 patent are the same and each claim (with one immaterial change to chemical nomenclature):

10

A crystalline form A of 2-[2-chloro-4-methyl-sulfonyl-3-(2,2,2-trifluoroethoxymethyebenzoyl]-cyclohexan-1,3-dione, which in an X-ray powder diffraction diagram at 25° C. and Cu-Kα radiation displays at least 3 of the following reflections, quoted as 2θ values: 5.6 ± 0.2°, 8.9 ± 0.2°, 11.1 ± 0.2°, 14.0 ± 0.2°, 18.9 ± 0.2°, 23.4 ± 0.2°, 26.7 ± 0.2°, 28.9 ± 0.2° and 36.2 ± 0.2°.

The remaining claims substantially overlap.

41. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

42. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬.

43. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬

44. ▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬



47.     During most of that time, the parties have also instituted several legal actions in Europe over the validity and Bayer's alleged infringement of EP '142.

48.     In Europe, Bayer is affiliated with several other Bayer entities.  Bayer AG is Bayer's corporate parent, incorporated in Germany.  Bayer CropScience AG and Bayer CropScience Deutschland GmbH are Bayer affiliates in Germany.  Bayer CropScience SRL is a Bayer affiliate in Italy.

**Italian Proceeding**

49.     In January 2016, Bayer affiliates filed suit in an Italian court alleging that EP '142 was invalid in light of Bayer's prior invention of tembotrione. The Bayer affiliates also alleged that they could not infringe EP '142 because of their prior use of tembotrione in Europe. Bayer's Italian complaint sought a declaration that the German and Italian designations of EP '142 are invalid and not infringed.

50.     On June 1, 2016, BASF answered Bayer's complaint in the Italian litigation. BASF asserted counterclaims that Laudis® infringes claim 1 covering crystalline form A as well as several other claims of EP '142. BASF also denied the allegations that EP '142 was invalid. BASF's counterclaims seek a declaration that Laudis® infringes the Italian version of EP '142 and that Bayer must pay damages for infringement (including lost profits). The trial court recently ruled that separate proceedings must be held for the German and Italian versions of EP '142. This litigation is ongoing.

**German Proceeding**

51.     On April 29, 2016, BASF filed suit against Bayer's German affiliates in a German court alleging that Laudis® infringed a German utility model. A utility model is a type of intellectual-property right in Germany similar to a patent. BASF alleges that Bayer's Laudis® product infringes claims 1 and 7 of the utility model, which cover the same crystalline form of tembotrione claimed in the '769 patent. BASF also claims that Laudis® infringes claims 10 and 11 of the utility model because Laudis® is a non-aqueous suspension concentrate and is offered in water-dispersible granules. BASF seeks damages, the recall and/or destruction of tembotrione in the crystalline form claimed in the '769 patent and its European counterparts, and legal fees. This litigation is ongoing.

**European Patent Office Proceeding**

52.      Also on April 29, 2016, Bayer entered an opposition before the European Patent Office to EP '142. Among other claims, Bayer asserts in the opposition that BASF's European counterpart patent is invalid based on Bayer's prior development and public use of tembotrione. That dispute is ongoing.

53.      The ongoing disputes between the parties over the '769 patent family creates a case or controversy between the parties. Given BASF's views of infringement of claims that are identical to those in the '769 patent, Bayer has the choice to cease selling Laudis® in the United States, agree to a license, or continue to engage in behavior that BASF has elsewhere said is illegal and subject to damages. Bayer does not believe it needs to cease selling Laudis® or purchase a license to the '769 patent family because the claims of the '769 patent family are invalid or not infringed. This dispute is of particular importance to Bayer's sales in the United States given the size of the market here for Laudis®.

54.      Therefore, Bayer seeks declaratory judgments that claims of the '769 patent are invalid and that Bayer does not infringe any claim of the '769 patent.

**COUNT I: INVALIDITY OF THE '769 PATENT**

55.      Bayer realleges all of the above paragraphs, as if set forth specifically here.

56.      The 'first-to-file" provisions of the AIA apply to applications filed on or after March 16, 2013. Since BASF filed the PCT from which the '769 patent claims priority on March 14, 2008, which is the effective United States filing date, the amendments made to 35 U.S.C. § 102 by the America Invents Act (AIA) do not apply.

14

57.     At least claims 1-3, 9-10, and 17 of the '769 patent are invalid under pre-AIA

35 U.S.C. § 102(a). Prior to amendment, 35 U.S.C. § 102(a) provided that a person is entitled to

a patent unless:

> (a) the invention was known or used by others in this country, or
> patented or described in a printed publication in this or a foreign
> country, before the invention thereof by the applicant for a patent.

58.     The invention claimed in the '769 patent was used by others in this country. For

example and without limitation, in 2006 Bayer distributed samples from EFIM0000409,

06DAL005P061, and 04DAL002P122 to university cooperators in the United States who had no

obligation of secrecy. These cooperators included individuals at the University of Delaware,

North Dakota State University, Texas A&M University, Ohio State University, Southern Illinois

University, Kansas State University, and Pennsylvania State University. The university

cooperators then publicly used tembotrione formulations embodying the inventions claimed in at

least claims 1-3, 9-10, and 17 of the '769 patent and, in many cases, published the results of their

public use.

59.     The 2006 use by others in this country of the invention claimed in the '769 patent

was before the purported March 15, 2007 invention thereof by the applicant.

60.     At least claims 1-3, 9-10, and 17 of the '769 patent are invalid under

35 U.S.C. § 102(b). Prior to amendment, 35 U.S.C. § 102(b) provided that a person is entitled to

a patent unless:

> (b) the invention was patented or described in a printed publication
> in this or a foreign country or in public use or on sale in this
> country, more than one year prior to the date of application for
> patent in the United States.

61.     As alleged above, the invention claimed in the '769 patent was in public use in the

United States more than one year prior to March 14, 2008. For example and without limitation,

tembotrione batches OLB 030122 and PFI 0254 and tembotrione formulation EFIM0000409

were present in the United States before 2006. Bayer then distributed formulated samples

containing tembotrione to university cooperators who had no obligation of secrecy. The

university cooperators then publicly used tembotrione and, in many cases, published the results

of their public use.

62.     At least claims 1-3, 9-10, and 17 of the '769 patent are invalid under 35 U.S.C.

§ 102(g). Prior to amendment, 35 U.S.C. § 102(g) provided that a person is entitled to a patent

unless:

> (2) before such person's invention thereof, the invention was made
> in this country by another inventor who had not abandoned,
> suppressed, or concealed it.

63.     For example and without limitation, Bayer sent tembotrione batches containing

subject matter claimed in the '769 patent to the United States as early as 2003. ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

Tembotrione batches OP2350088, PFI0254, and PFI0330, or formulations EFIM0000409,

06DAL005P061, and 04DAL002P122 embodied the compositions and processes claimed in at

least claims 1-3, 9-10, and 17 of the '769 patent, and were in the possession of persons in the

United States.

64.     The invention of at least claims 1-3, 9-10, and 17 of the '769 patent was before

the "invention thereof" by the '769 inventors. On information and belief, the inventions claimed

in the '769 patent occurred no earlier than March 15, 2007. Bayer's prior invention of at least

claims 1-3, 9-10, and 17 of the '769 patent alleged above was no later than 2006.

16

65.     Bayer's invention of at least claims 1-3, 9-10, and 17 of the '769 patent was not abandoned, suppressed, or concealed. The process for commercializing an herbicide such as Laudis® can take several years. At all times from conception, Bayer performed the work necessary to commercialize tembotrione as a marketed herbicide. As alleged above, in 2006 Bayer personnel in the United States distributed samples of formulated Laudis® to university cooperators who publicly used the invention. Moreover, Bayer worked to commercialize its prior invention, including submitting its application to the EPA in November 2005 to register tembotrione as an herbicide.

### COUNT II: NON-INFRINGEMENT OF THE '769 PATENT

66.     Bayer realleges all of the above paragraphs, as if set forth specifically here.

67.     The manufacture, use, offer for sale, sale, export, import, and/or any other of Bayer's activities or potential activities do not directly or indirectly infringe claims 4-8, 11-16, and 18 of the '769 patent, either literally or under the doctrine of equivalents.

68.     For example and without limitation, Laudis® does not infringe claim 4 of the '769 patent because Bayer does not use any the claimed solvents in the production of the claimed Form A of tembotrione. Laudis® does not infringe claims 5-8, 13-16, and 18 because Laudis® does not contain the claimed crystalline Form C of tembotrione. Laudis® does not infringe claims 11 and 15 of the '769 patent because Laudis® is not formulated as a non-aqueous suspension concentrate. Laudis® does not infringe claims 12 and 16 of the '769 patent because Laudis® is not formulated as a powder or granules dispersible in water.

69.     Bayer does not infringe at least claims 1-3, 9-10, and 17 of the '769 patent under 35 U.S.C. § 273 based on Bayer's commercial use of the subject matter of the '769 patent more than one year before its effective filing date.

70. The post-AIA version of § 273 is effective for patents that issued on or after

September 16, 2011. Since the '769 patent issued on November 13, 2012, the amendments made

to 35 U.S.C. § 273 by the America Invents Act therefore apply to the '769 patent. As amended,

35 U.S.C. § 273 provides:

> (a) In general.--A person shall be entitled to a defense [against infringement of a patent] under section 282(b) with respect to subject matter consisting of a . . . composition of matter used in a manufacturing or other commercial process, that would otherwise infringe a claimed invention being asserted against the person if:
>
> (1) such person, acting in good faith, commercially used the subject matter in the United States, either in connection with an internal commercial use or an actual arm's length sale or other arm's length commercial transfer of a useful end result of such commercial use; and
>
> (2) such commercial use occurred at least 1 year before the earlier of either--
>
> (A) the effective filing date of the claimed invention; or
>
> (B) the date on which the claimed invention was disclosed to the public in a manner that qualified for the exception from prior art under section 102(b).

71. Bayer satisfies the statutory requirements for non-infringement. For example and

without limitation, Bayer acted in good faith because it independently developed, tested, and

marketed tembotrione and Laudis®, which is comprised of subject matter claimed in the '769

patent. In addition, Bayer commercially used the subject matter of the '769 patent. Laudis® was

subject to premarketing regulatory review with the EPA during which the EPA evaluated its

safety. Bayer filed an application for premarketing regulatory review of Laudis® on November

16, 2005. As a result, Laudis® and therefore the subject matter of the '769 patent were in

commercial use at least as of this date. November 16, 2005 is more than one year before the

effective filing date for the '769 patent. Bayer's Laudis® product therefore does not infringe the '769 patent under 35 U.S.C. §§ 282(b) and 273.

## JURY DEMAND

72.     Bayer demands a trial by jury on any and all issues so triable as of right.

## PRAYER FOR RELIEF

WHEREFORE, Bayer CropScience LP respectfully demands judgment for itself and against BASF SE as follows:

A.  A judgment declaring that claims 1-3, 9-10, and 17 of the '769 patent are invalid;

B.  A judgment declaring that Bayer does not infringe any claim of the '769 patent;

C.  A judgment declaring that this case is exceptional under 35 U.S.C. § 285, and an award of reasonable attorney's fees;

D.  An award of taxable and non-taxable costs and expenses; and

E.  Such other relief as this Court may deem proper.

19

Dated: September 26, 2016            Respectfully submitted,

Stephen E. Noona
Virginia State Bar No. 25367
Clark J. Belote
Virginia State Bar No. 87310
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Telephone: 757-624-3000
Facsimile: 888-360-9092
senoona@kaufcan.com
cjbelote@kaufcan.com

Adam K. Mortara (*pro hac vice* forthcoming)
J. Scott McBride (*pro hac vice* forthcoming)
Matthew R. Ford (*pro hac vice* forthcoming)
Alex L. Groden (*pro hac vice* forthcoming)
BARTLIT BECK HERMAN
   PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: 312-494-4400
Facsimile: 312-494-4440
adam.mortara@bartlit-beck.com
scott.mcbride@bartlit-beck.com
matthew.ford@bartlit-beck.com
alex.groden@bartlit-beck.com

*Counsel for Plaintiff Bayer CropScience LP*